## MARIA B. HAWKINS, Respondent, *v.* GLOBE PRINTING COMPANY, Appellant.

### April 5, 1881.

1. The publication of that portion of the testimony, given in court, which is damaging to the reputation of another, is not privileged.

2. The publication of court proceedings is not privileged, unless the account published be a fair, complete, and impartial statement of the facts.

3. Proof that the person from whom the libeller received the statements published, believed them to be true, is not competent in mitigation of damages.

4. Under a plea of justification in a libel suit, the defendant may show palliating circumstances in mitigation of damages.

5. Proof of particular acts is not competent to show general conduct.

6. Appellate courts will not, in a libel suit, reverse, on the ground of excessive damage, except strong circumstances of mitigation appear.

APPEAL from the St. Louis Circuit Court, THAYER, J. *Affirmed.*

SAMUEL KNOX, for the appellant : Even though the report is not privileged, it may be shown in mitigation that the report, although not correct, was an honest one, and intended to be a fair account of the transaction. — Towns. on Slan. & L. (3rd ed.), sect. 403 ; *Smith* v. *Scott*, 2 Car. & Kir. 580 ; *East* v. *Chapman*, Moo. & M. 46 ; *Donnelly* v. *Swain*, 2 Phila. Rep. 93 (cited in Towns. on Slan. & L., sect. 409, note 4) ; *Huson* v. *Dale*, 19 Mich. 17, 34, 35. If the publication was a fair account of the *whole* proceeding before the magistrate, and the statements of the witnesses and parties interested, forming part of or connected with

such proceedings, it was privileged, and plaintiff could not recover. — *Barber* v. *St. Louis Dispatch Co.*, 3 Mo. App. 377, 382. Defendant was entitled to prove all the circumstances connected with and leading to the publication ; and also to prove how far the account was correct, if those circumstances tended to show a want of malice. — *Weaver* v. *Hendrick*, 30 Mo. 502.

A. W. MEAD and FORD SMITH, for the respondent: Proof of the general reputation of the plaintiff before the publication is admissible, but not proof of particular acts, or the testimony of a witness as to plantiff's habits in regard to any particular thing. — *Fitzgerald* v. *Stewart*, 53 Pa. St. 343 ; *Fountain* v. *West*, 23 Iowa, 9 ; *Lamos* v. *Snell*, 6 N. H. 413 ; *Stone* v. *Varney*, 7 Metc. 86. It is no defence in an action of libel to prove that the same charge had been made by others. — *Anthony* v. *Stephens*, 1 Mo. 150 ; *Buckley* v. *Knapp*, 48 Mo. 152. The fact that the charge had been previously made by another will not screen the person repeating it, unless he proves that at the time of repeating it he gave the name of the original author. — *Moberly* v. *Preston*, 8 Mo. 462 ; *Johnson* v. *Dispatch Co.*, 65 Mo. 539.

BAKEWELL, J., delivered the opinion of the court.

This is an action for damages alleged to have been sustained by respondent by reason of the following publication in the *Globe-Democrat*, a newspaper, published in St. Louis by the defendant corporation : —

"A NOVEL ARRANGEMENT.

"A singular case was on trial recently before Justice Von Gerichten, in which Mrs. Ella Mahoney sued Mrs. Maria Hawkins for $50, the value of a shawl which was destroyed by the latter. Both parties reside in the vicinity of Twenty-third and Biddle Streets, Mrs. Mahoney living with her husband, and Mrs. Hawkins, who is a widow, keeping a bakery

there. It appeared from the testimony and statements of the interested parties, that for some time, the Widow Hawkins had been in the habit of calling at the residence of Mrs. Mahoney in the evening, where she was warmly received by both husband and wife. Beer would be sent for, and after the trio had indulged to an extent that made them hilarious, the widow would retire with Mr. Mahoney, and the wife would pass the night on the sofa. This unnatural arrangement was followed by results naturally to be expected. One night recently, Mrs. Hawkins called as usual; the beer was brought in and the sleeping arrangement was duly carried out. About five o'clock on the following morning, Mrs. Mahoney had sobered up sufficiently to realize her position, and after thinking of the matter for some time, she determined to protest. She therefore ordered the widow to leave the house, and warned her never to come there again if she valued her life. As the weather was cold, Mrs. Hawkins borrowed Mrs. Mahoney's shawl and left the house. On her arrival at home, she was so enraged and mortified at this, to her, remarkable conduct, on the part of Mrs. Mahoney, that she took the borrowed shawl and tore it into ribbons. Mrs. Mahoney called for the shawl within a few days afterwards and was presented with what remained of it, whereupon she determined to appeal to the law. A verdict was rendered in her favor for the full amount claimed."

The answer denies specifically each allegation of the petition, and then says that the article complained of was written by an employee of defendant, and was based on information received from Justice Von Gerichten, who tried the case referred to in the petition, in which said justice rendered judgment against the present plaintiff for the value of the shawl; that the publication was without malice, as an article of news; that plaintiff is given to drunkenness; that before the publication she came to Mahoney's house at

night, under the influence of liquor, would send for more beer until overcome, and thereupon remain in the Mahoney house all night, and that the matters stated in the article as having happened, did happen, as alleged.

On the trial, Mrs. Mahoney and Mrs. Hawkins were both examined. Mrs. Mahoney swore that Mrs. Hawkins undressed and went to bed, on one occasion, in the same bed with Mrs. Mahoney and Mahoney and their children, and spent the night so ; and that Mahoney at the time was in the bed with his clothes on, which Mrs. Hawkins asked him to remove. Mrs. Hawkins's statement is, that on this occasion she was called in by Mrs. Mahoney to protect her and her children from Mahoney, who was drunk; that she acted as peacemaker, and persuaded the wife not to have her husband arrested. She admits that she lay down on the bed and slept that night with Mr. and Mrs. Mahoney and their children, but says that she did not undress, and had all her clothes on except her stockings. For defendant a great many witnesses were introduced, who swore that Mrs. Hawkins's character for sobriety was bad ; that she had the character in the neighborhood of being a scold, and of indulging in obscene and profane language ; and a very large number of witnesses on behalf of plaintiff testified that she was an industrious, hard-working, good-natured woman, who sometimes drank too much, but never to such an extent that she could not attend to business, and that she was not foul-mouthed or profane. It was further shown that she was the widow of a deceased member of the city council of St. Louis, and that she supports herself by keeping a bakery. There was a verdict and judgment for the plaintiff for $1,000.

The defendant offered to prove by one Byers, the reporter of another St. Louis paper, " that the reporter of the *Globe-Democrat* and this witness were together at the office of Von Gerichten, and that this was a fair publication, and was what they were both informed took place before the

magistrate, and it was in the knowledge of this witness, and that the information published in the *Globe-Democrat* was exactly the facts from the 'squire, to show that there was no malice." To this offer the court said: "If that is what you propose to prove by the witness — the manner in which it was obtained from the justice — I shall exclude it." Counsel for defendant then said that they proposed to show by this witness that the publication was made in good faith, as an item of news, the facts being obtained from the magistrate and given to the public as being obtained from the magistrate at his office. The testimony was objected to, and the objection sustained.

Afterwards, Von Gerichten was introduced by defendant. It was shown by him that he was the justice before whom the suit between Mahoney and Hawkins, about the shawl, was tried. Counsel for defendant then desired this witness to take the paper and state what he knew, from the facts and statements that had appeared before him, as to the correctness or incorrectness of the publication. This was objected to and the objection sustained. Counsel for defendant then asked the court whether its ruling extended to this, that he could not question the witness as to what took place at that trial, and in what respect, if any, the published account was incorrect. To which the court replied that the answer did not set up that the publication was a fair report of a trial; that it does not allege that the reporter was present, heard the proceedings, and reported them as the proceedings before the justice; that the allegation in the answer, that, subsequently to the trial, some person made a statement to the reporter as to something at the trial, is no plea of a privileged publication; that the answer sets up that a certain thing to be inferred from the newspaper article did take place; but that there is no attempt to justify on the ground of a privileged communication. The testimony was excluded.

A fair report of a trial in a court of justice is privileged. But, if a party is to be allowed to publish what passes in a court of justice, he must publish the whole case. An abridged report may be a fair report. But a report of a portion of the testimony only, is manifestly not a fair report. A portion of the testimony may be very damaging to a person, when the whole testimony might be highly to his honor. It was not pleaded, and it is not pretended in this case, that the publication was a privileged communication, as being a fair, impartial, and complete statement of a judicial proceeding. However honestly the person who publishes a libel believes it to be true, if it is untrue in fact, the law implies malice, unless the occasion justifies the act. In the case at bar, the defendant pleaded the truth of the accusation. It is the English doctrine, and it has been held in America, that where the defence was a plea of justification, the defendant will not be allowed to prove palliating circumstances in mitigation. *Alderman* v. *French*, 1 Pick. 18; *Shelton* v. *Simmons*, 12 Ala. 466. But this is not generally held in this country now. *Pallet* v. *Sargent*, 36 N. H. 496; *Morehead* v. *Jones*, 2 B. Mon. 210; *Landis* v. *Shanklin*, 1 Smith (Ind.), 78; *Sloan* v. *Petrie*, 15 Ill. 425; *West* v. *Walker*, 2 Swan, 32. That defendant was not the fabricator of the charges, and that he received them from others under circumstances naturally inducing the belief that the charges were true, might be admitted in mitigation of damages. But we do not see how evidence tending to show that the person from whom he received the injurious statements was warranted in believing them, could be competent in mitigation of damages or otherwise. We are of opinion that the testimony offered was properly excluded.

Particular acts of plaintiff in the presence of others were offered to show her general conduct. These were properly excluded.

In rebuttal, the court admitted the following article

which appeared in the *Globe-Democrat* on the day after the publication of the alleged libel : —

" CORRECTION. — Mrs. Ellen Mahoney, whose name appeared in the court reports yesterday, in connection with a suit before Justice Von Gerichten, excepts to the inference drawn from the testimony that she was in the habit of becoming intoxicated. She adds that she is not accustomed to such excess, and that she never yielded her marital rights to the defendant in the suit at any time, and never lent the shawl which formed the basis of the suit. On behalf of Mrs. Hawkins, it is also positively asserted that she was not guilty of too great a degree of social intimacy with the husband of plaintiff, and that her conduct, in that respect, was irreproachable."

It is difficult to see for what purpose this second publication was offered, or how it was competent in rebuttal. But it is manifest that its introduction was not calculated to prejudice defendant, and that its introduction, whether out of order or not, can furnish no sufficient ground for reversing the judgment.

No complaint is made here of the instructions. The jury were told to find for defendant if they believed from the evidence that the publication was true ; and that, if the article complained of was not true, the plaintiff can only recover actual damages, unless the jury believe that the article was published through actual malice for the purpose of injuring the plaintiff.

Appellant complains that the damages are excessive. The rule is that a new trial in a libel suit will not be granted on the ground of excessive damages except strong circumstances of mitigation appear. We do not think that we have any right to interfere in this case. The facts were for the jury, who have found, under the instructions of the court, that the facts stated in the publication were untrue. We need not dwell upon this point.

The judgment must be affirmed. All the judges concur.