## FRANK M. BROWN v. GLOBE PRINTING COMPANY, Appellant.

### Division Two, July 14, 1908.*

1. **LIBEL: Privileged Occasion: Extradition Proceedings.** Public proceedings before the Governor of another State, in which the Governor considers the legality of extradition papers from the Governor of this State and the propriety of approving a requisition for a resident of his State, and in which arguments are made by attorneys in connection therewith, are of a quasi-judicial character and form a privileged occasion; and a report thereof by a newspaper, if a full, fair and impartial one, is also privileged.

2. ———: ———: ———: **Abridged Report: Fair Report: Question for Jury.** After the return into court in this State of an indictment against a resident of another State, all the proceedings with respect thereto and in connection therewith, including the proceedings for his extradition, constituted one privileged occasion, and full or abridged reports thereof were privileged, provided they were fair and impartial so far as plaintiff (the prosecuting attorney) was concerned. And if the abridged reports, as published in defendant's newspaper, had the same effect upon plaintiff's character as a full and verbatim report would have had, they were fair and impartial; but whether they had the same effect was a question for the jury.

3. ———: **Privileged Matter: Headlines: Comment.** Headlines to a newspaper publication are privileged only when they are a fair index of a truthful report. Where they are no part of the pro-

---

*Note.—Decided June 16, 1908. Motion for rehearing filed; motion overruled July 14, 1908.

ceedings on a privileged occasion, but voluntary statements of the publisher of the alleged libel, they are not privileged. Thus, to its report of charges made by Ziegler's lawyer, in his brief in the extradition hearing, before the Governor of New York, defendant added these headlines: "Ziegler's lawyer calls Brown liar; accuses him of perjury; declares if Missourian visits New York he will be arrested; insists Cole County Prosecutor made affidavit he knew was false." *Held*, to be libelous remarks or comments, even if the report could be deemed otherwise privileged. They were unnecessary to a fair and truthful report of judicial proceedings, and likely to raise inferences highly detrimental to plaintiff's character and standing.

4. ———: ———: **Lawyer's Brief.** Defamatory charges made by a lawyer in a quasi-judicial proceeding concerning plaintiff, either in his oral argument or in his printed brief filed, such as, Plaintiff "had committed perjury pure and simple," and had "committed a crime of the highest grade," even if privileged when made, were no longer privileged after the occasion which brought them forth had ceased, and thereafter neither the person making them nor any other person who heard them had the right to publish them. When the occasion ceased the right ceased, and it is no justification for the publisher of a newspaper to plead that the publication of them was a transcript of the speech or brief.

5. ———: ———: ———: **Partial Report.** A publication by defendant in its newspaper, not of the entire brief of the lawyer, but only of such portions thereof as seem to reflect upon the character and integrity of the plaintiff and to impute to him a crime or moral turpitude, are not privileged.

6. ———: ———: **Verdict of Jury.** Where the question of whether the publication was a libel was submitted to the jury by an instruction asked by defendant, in which they are told that they are the sole judges of the law as well as of the facts, and they find for plaintiff, they in effect find that the publication was libelous, and therefore not privileged.

7. ———: ———: **After Close of Proceedings.** A newspaper is not at liberty to publish excerpts from a lawyer's brief after the judicial or quasi-judicial proceedings have closed and the decision is rendered. So that, where, in an extradition proceeding before the Governor of New York, the brief of the lawyer was received by the Governor on January 12th, and the proceedings were closed and the decision rendered on February 1st, defamatory matter concerning plaintiff extracted from the brief appearing in defendant's newspaper on February 3rd, was not privileged.

8. ———: ———: **Instructions: Refused: Similar to One Given.**
An appellant cannot predicate error of the action of the court
in giving an instruction asked by himself, even though it be
erroneous and open to the same objections found in other re-
fused instructions. Nor can appellant complain that if two of
his instructions were properly refused then another given should
also have been refused since it is open to the same objections.

9. ———: ———: ———: **Malice: Omitted Parts.** Where the
published charge is libelous *per se*, such as perjury, and parts
of the brief from which the article was extracted, if they had
been published in full, would have tended to overcome or neu-
tralize the charge, it is not error to instruct the jury that "the
omission or suppression of parts of the proceedings which would
tend to qualify or explain the defamatory matter and place it
in a more favorable light for plaintiff, is evidence of malice and
destroys the privilege."

10. ———: ———: ———: **More Pointed.** If defendant desires
more pointed instructions than the one given, for instance, one
affirmatively submitting the defense of privilege in a libel case,
it should ask it. The court is not required in a civil suit to
give instructions of its own motion.

11. ———: **Per Se: Verdict.** Where the publication is libelous
*per se* and not privileged, plaintiff is entitled to a verdict, and the
only question is the amount of damages to be allowed by the
jury.

12. ———: **Verdict: Excessive.** The question of damages in a libel
suit is within the peculiar province of the jury, rests in their
sound discretion, and unless the award is so outrageous as to
strike everyone with its enormity and injustice, and as to in-
duce the court to believe that the jury must have acted from
prejudice, partiality or corruption, the court will not interfere
with the verdict as being excessive. Other cases form no guide
or rule for the measure of damages, and of necessity the jury
are the sole judges of the amount.

Appeal from Cole Circuit Court.—*Hon. Wm. H. Mar-
tin,* Judge.

AFFIRMED.

*Ashley C. Clover* and *W. S. Pope* for appellant.

(1) A publication of all the proceedings concern-
ing the extradition proceedings in the case of the State

of Missouri against William Ziegler was privileged, if fair and impartial. 22 Cyc. Libel and Slander, p. 411; 18 Am. and Eng. Ency. Law (2 Ed.), 1043, 1045 and 1046; Boogher v. Knapp, 97 Mo. 122; Beiser v. Scripps-McRae Pub. Co., 113 Ky. 383; McBee v. Fulton, 47 Md. 403; Barrows v. Bell, 7 Gray 301; Wason v. Walter, 4 Law Rep. Q. B. 73; Tresca v. Maddox, 15 Am. Dec. 214; Bissell v. Press Pub. Co., 66 Hun 551; Stuart v. Press Pub. Co., 82 N. Y. Sup. Court 401; Locke v. Bradstreet, 22 Fed. 71; Usill v. Hailes, 3 C. P. D. 319. (2) It did not lose that character because abridged and condensed, if it remained fair and impartial. Boogher v. Knapp, 97 Mo. 122; Newell on Slander and Libel, p. 554, sec. 161; 18 Am. and Eng. Ency. Law, 1045; Folkard's Starkee on Slander and L., sec. 227; Tresca v. Maddox, 15 Am. Dec. 214; Cowley v. Pulsifer, 137 Mass. 392; Risk Alley Bey v. Whitehurst, 18 L. T. U. S. 615; Lewis v. Levy, El., Bl. & El. 537. (3) The headlines of the publication are likewise privileged if they were a fair index of the matter contained in the publication. Lawyers' Co-operative Pub. Co. v. West Pub. Co., 32 App. Div. 585; Edsall v. Brooks, 2 Rob. (N. Y.) 29; Salisbury v. Advertiser Co., 45 Hun 120. (4) The presumption of malice arising from the false publication of libelous matter is overcome when the occasion of the publication is privileged, and there can be no recovery except upon proof of actual or express malice. Wagner v. Scott, 164 Mo. 301; Finley v. Steele, 159 Mo. 299; Sullivan v. Com. Co., 152 Mo. 268; Hancock v. Blackwell, 139 Mo. 451; Boogher v. Knapp, 97 Mo. 122; Briggs v. Garrett, 111 Pa. 404; Neeb v. Hope, 111 Pa. 145; Hamilton v. Eno, 81 N. Y. 124; Bacon v. Railroad, 66 Mich. 166; Conroy v. Pittsburg Times, 139 Pa. 334; Bradstreet Co. v. Gill, 72 Tex. 115; Behe v. Railroad, 71 Tex. 424; Publishing Co. v. Gamble, 115 Tenn. 663; Wright v. Woodgate, 2 Cromp. M. & R. 573; Newell on

Slander and Libel (2 Ed.), p. 391, sec. 6; Lewis v. Champan, 18 N. Y. 369. (5) The inaccuracy or unfairness of a publication alleged to be privileged is no evidence of malice, nor, if such publication is found to be fair and impartial, can the character of the publication be considered on the question of actual or express malice. Authorities cited under point 4. (6) Defendant was entitled to have its defense of privileged publication clearly and pointedly presented to the jury, which the court's instruction of its own motion failed to do. Mullally v. Greenwood, 127 Mo. 138; Humbird v. Railroad, 110 Mo. 82; Kountz v. Kaufman, 31 Mo. App. 397; Gray v. McDonald, 28 Mo. App. 492; Cahn v. Reid, 18 Mo. App. 115; Sawyer v. Railroad, 37 Mo. 263; Becraft v. Grist, 52 Mo. App. 586; State v. Pettit, 119 Mo. 410; Greer v. Railroad, 80 Mo. 555; Medlin v. Brooks, 9 Mo. 106. (7) The court erred in giving plaintiff's instructions 7 and 11, because they assume to state all the facts necessary to a recovery and fail to direct the jury's attention to defendant's affirmative defense of privilege, which is not correctly presented in any instruction given by the court. Drum-Flato Co. v. Bank, 107 Mo. App. 432; Carder v. Primm, 60 Mo. App. 423; Wallace v. Wright, 82 Mo. App. 252; Cultivator Co. v. Railroad, 64 Mo. App. 312; Borden v. The Falk Co., 97 Mo. App. 566; Brownlow v. Wallard, 66 Mo. App. 642; Carroll v. Railroad, 60 Mo. App. 468; McQuillan's Instructions, secs. 127-128; Hanheide v. Railroad, 104 Mo. App. 323. (8) The giving of instruction 2, requested by defendant, and the giving of the instruction of its own motion by the court was error, as they are inconsistent and contradictory, and must have misled the jury. Henschen v. O'Bannon, 56 Mo. 289; Otto v. Bent, 48 Mo. 23; Stevenson v. Hancock, 72 Mo. 614; Spillane v. Railroad, 111 Mo. 555; Livingston v. Railroad, 170 Mo. 452; Emmons v. Quade, 176 Mo. 32. (9) The

court should have directed a verdict for the defendant, as requested, at the close of the evidence, for the occasion was privileged, the report of the proceedings absolutely fair and impartial in relation to their effect on plaintiff's character, and there was no evidence, either intrinsic or extrinsic, of actual malice on the part of the defendant. Newell on Slander and Libel (2 Ed.), p. 392, sec. 10; Neeb v. Hope, 111 Pa. St. 145; Briggs v. Garrett, 111 Pa. St. 404; Nichols v. Eaton, 110 Iowa 509. (10) The court erred in giving plaintiff's instruction 3, and in refusing defendant's refused instruction 2, for where in an action for libel the words set forth in their ordinary sense import a charge of crime, so as to be libelous, yet if they are connected with other words which rebut the idea of criminality, there is no libel. Johnson v. St. Louis Despatch Co., 2 Mo. App. 565, 65 Mo. 539; Hall v. Adkins, 59 Mo. 144; Trimble v. Foster, 87 Mo. 49; Carpenter v. Hamilton, 185 Mo. 603; Grimes v. Thorp, 113 Mo. App. 652; Israel v. Israel, 109 Mo. App. 366; Aeple v. Wright, 17 Ohio St. 238; Alderson v. Auerswald, 80 Mo. App. 370; Brown v. Meyers, 40 Ohio St. 99; Faussett v. Clark, 48 Md. 494; Morton v. Ladd, 5 N. H. 203; Miller v. Johnson, 79 Ill. 58; Edgerly v. Swain, 32 N. H. 478; Palmer v. Anderson, 33 Ala. 78; Wing v. Wing, 62 Me. 62; Harrington v. Miller, 11 Kan. 480; Hoskins v. Torrence, 5 Blackf. (Ind.) 417; Carmichael v. Shiel, 21 Ind. 66; Walford v. Herald Pr. Co., 133 Ind. 374; Hawkins v. New Orleans Tr. Co., 29 La. Ann. 134; Randall v. Evening News Co., 101 Mich. 561; Cramer v. Noonan, 4 Wis. 231; 25 Cyc., Slander and Libel, p. 275; 18 Am. and Eng. Ency. Law (2 Ed.), 987. (11) The verdict is against the weight of the evidence, is excessive in amount, and is the result of bias and prejudice on the part of the jury towards defendant. (12) The plaintiff herein was only entitled to recover such damages as he may have suffered

by the reason of the publication of the alleged defamatory matter in Cole county.

*Edwin Silver* and *J. L. Smith* for respondent.

(1) 1. It is sufficient to make a written or printed publication libelous and actionable *per se* that it is false and tends to expose one to public hatred, contempt and ridicule or to blacken his reputation. It is not necessary that the publication should charge a crime or indictable offense. The distinction between oral slander and written slander or libel in the foregoing respect is well recognized in this State. Nelson v. Musgrave, 10 Mo. 648; Price v. Whitely, 50 Mo. 439; McGinnis v. George Knapp & Co., 107 Mo. 131; Ukman v. Daily Record Co., 189 Mo. 378; Manget v. O'Neill, 51 Mo. App. 26. 2. A newspaper is responsible for what it publishes, the same as an individual. Johnston v. Post-Dispatch Co., 65 Mo. 539; Arnold v. Saying Co., 76 Mo. App. 159; State ex inf. v. Sheppard, 177 Mo. 244; Shekell v. Jackson, 10 Cush. 25; Haynes v. Press Co., 169 Mass. 512; McDonald v. Woodruff, 2 Dillon 214; 2 Greenleaf on Evidence (16 Ed.), sec. 398. "The authorities, English as well as American, have generally held the publisher and editor of a newspaper to the same rigid responsibility with any other person who makes injurious communications; malice on his part being conclusively inferred if the communications are false in fact. It is no defense that they have been copied with or without comment from another paper, or that the source of the information is stated at the time and the information is believed to be true." Fitzpatrick v. Publishing Co., 48 La. Ann. 1135. That the name of the author of the publication was given does not relieve the paper. Hotchkiss v. Oliphant, 2 Hill 510. To repeat or publish a slanderous statement is to indorse it as genuine. Bee Pub. Co. v. Shields, 94 Neb. 1029; Meyer v. Adams,

1 Mo. App. 329. Nor does the want of intention to vilify or defame render an objectionable publication any the less a libel. Curtis v. Mussey, 6 Gray 261. Though the want of such intention may be shown in mitigation of exemplary damages. Jones v. Murray, 167 Mo. 25. (2) Words charging one with having committed perjury are actionable *per se.* Newell on Slander & Libel (2 Ed.), p. 124; Perselly v. Bacon, 20 Mo. 331; Bricker v. Potts, 12 Pa. St. 200; Cooley on Torts (2 Ed.), p. 233 (note); Holt v. Turpin, 78 Ky. 433. (3) The defense of privilege interposed and relied on by defendant is not well taken. The quotations from the brief of Mr. Bowers and his associates, filed in the Ziegler extradition proceeding before the Governor of New York, are not privileged matter. A statement in a newspaper of the circumstances of a cause tried in a court of justice given as from the mouth of counsel, instead of being accompanied or corrected by the evidence, is not such a report of the proceedings of a court of justice as a newspaper is privileged to make. Saunders v. Mills, 6 Bing. 213; Rex v. Carlile, 3 B. & A. 167; Rex v. Creevey, 1 M. & S. 273. The speech of counsel in a judicial proceeding does not afford matter for a privileged publication, and if it is scandalous, its publication is a libel. Com. v. Godshalk, 13 Phila. 875. Publication of a court proceeding is not privileged unless it is a fair, complete and impartial statement of the facts. Hawkins v. Globe Printing Co., 10 Mo. App. 174. The report of a judicial proceeding to be privileged must be an accurate and impartial account of what actually occurred. Post Pub. Co. v. Moloney, 50 Ohio St. 71; Stanley v. Webb, 4 Sandf. 21. As a general rule a full, fair and correct account of a trial in a court of justice is a privileged publication, but the report is confined strictly to a report of the proceedings in court, and must contain nothing in addition to what forms strictly and properly

the legal proceedings. Edsall v. Brooks, 17 Abb. Prac. 379; Cooley's Cons. Lim. (7 Ed.), p. 637. The great variety of telegrams sent by defendant's special correspondents from Jefferson City, Albany and New York, and retailing a great variety of occurrences, gossip and other things, some relating to the Ziegler indictment and extradition, can hardly be regarded as the report of actual proceedings in a court or a *quasi* court. The public is not regarded as having such an interest in proceedings embodying defamatory matter as will outweigh the necessity of protecting the character of individuals unless the proceedings are of a legislative or judicial character. Belo v. Wien, 63 Tex. 686. The publication of a report of a judicial proceeding is not privileged where (as here) it contains intrinsic evidence that it was not published for good motives or justifiable ends. Saunders v. Baxter, 53 Tenn. 369; Fudering v. Cramer, 53 Wis. 193; White v. Nichols, 3 How. (U. S.) 266. A person may publish a correct account of the proceedings in a court of justice, yet if he discolors or garbles the report or adds comments or insinuations of his own, aspersing the character of the parties concerned, he exceeds his privilege and his publication becomes a libel. Thomas v. Crosswell, 7 Johns. (N. Y.) 264; Dorr v. United States, 195 U. S. 138; Newell on Slander and Libel (2 Ed.), sec. 163. Privilege is a question of law when the facts as to same are undisputed. Callahan v. Ingram, 122 Mo. 355; Sullivan v. Com. Co., 152 Mo. 268; Jones v. Brownlee, 161 Mo. 258; Wagner v. Scott, 164 Mo. 289; Klinck v. Kalby, 46 N. Y. 431; Farley v. Thalkimer, 49 S. E. 644; Newell on Libel and Slander (2 Ed.), 391, sec. 9. (4) The damages were a proper matter for the jury, and were not excessive. The extent of the injuries to the person libeled as well as the malice, need not be specially proved, but may be inferred from the wrongful charges. Price v. Whitely, 50 Mo. 439; Her-

man v. Bradstreet, 19 Mo. App. 227; McClosky v. Pulitzer Pub. Co., 152 Mo. 339. The condition in life of plaintiff, and the number of the members of his family were proper subjects for the consideration of the jury on the question of damages. Polston v. See, 54 Mo. 291; Clements v. Maloney, 55 Mo. 352; Enos v. Enos, 135 N. Y. 609. So the evidence showing defendant's wealth was a proper matter for the consideration of the jury. Buckley v. Knapp, 48 Mo. 162. Shame and mortification may constitute grievous mental suffering, and are elements of actual damages. Graybill v. DeYoung, 140 Cal. 323; Baldwin v. Boulware, 76 Mo. App. 5; Brown v. Railroad, 99 Mo. 310. Where words impute an indictable offense, no special damages need be alleged. Rammell v. Otis, 60 Mo. 365; Lewis v. McDaniel, 82 Mo. 577. There is no scale for damages in a libel suit; the matter rests wholly with the jury. Minter v. Bradstreet Co., 174 Mo. 447; Sanderson v. Caldwell, 45 N. Y. 406. The assessment of damages is peculiarly the province of the jury in an action for libel. Gambil v. Schooley, 93 Md. 65. If the libel was sold to the public indiscriminately heavy damages should be given, for the defendant has put it out of his power to recall or contradict his statements, should he desire to do so. Lord Denman, in 9 A. & E. 549. In an action for libel, where the defendant does not contend that the article is true, and it is sensational in character and manner of publication, the jury may properly find it was a gross libel, though defendant was innocent of any malicious intent, and that plaintiff has been greatly injured in his feelings. Bishop v. Newspaper Co., 47 N. E. 119. A publication of defamatory matter made when the means of ascertaining the truth are easily accessible, and in the absence of extenuating circumstances or those which tend to excuse the wrong, always aggravates the injury. Long v. Tribune Ptg. Co., 107 Mich. 215. The fact that a publication libelous

*per se* was made without any attempt to ascertain its correctness is sufficient to justify a finding that it was a wanton or reckless publication. Van Inge v. Star Co., 37 N. Y. Supp. 114. Good faith can be established only by showing the exercise of ordinary care and prudence to ascertain whether the charges were false or not. Rose v. Company, 110 App. Div. (N. Y.) 437. The fact that a libel may not be believed does not excuse the party who publishes it, nor deprive the plaintiff of all recovery except for nominal damages. Bishop v. Journal Co., 47 N. E. 121. "Injury to the feelings as a matter of common experience is one of the most immediate as it is one of the keenest results of a libelous article, and may be taken into consideration by the jurors, simply from their general knowledge." Butler v. Barrett, 130 Fed. 909. The right to recover exemplary damages, where the publication is malicious, is not affected by the fact that the charge was so ridiculous on its face that no friends of plaintiff believed it. Van Ingen v. Star Co., 37 N. Y. Supp. 114.

BURGESS, J.—This is an action for damages for libel. Plaintiff recovered judgment for two thousand dollars actual damages and ten thousand dollars punitive damages against the defendant, from which judgment, after ineffectual motions for a new trial and in arrest, defendant appealed.

The petition sets forth, in substance: That plaintiff is a citizen of this State and an attorney at law, engaged in the practice of his profession at Jefferson City, Cole county, Missouri; that defendant is a business corporation of this State, with a capital stock of $500,000, and at the times mentioned in the petition was engaged in printing, publishing and selling a daily and other editions of a newspaper named and styled the "St. Louis Globe-Democrat;" that the defendant

corporation is the sole owner of said newspaper, and printed the same in the city of St. Louis, Missouri, where it has its principal office, and published, circulated and sold the same not only in St. Louis, but in different counties of this State, including Cole county, and also in the States of Illinois, Texas, Arkansas, Kansas, Iowa, the Indian Territory, and elsewhere; that the circulation of said newspaper exceeded one hundred thousand copies; that on February 2, 1904, and prior thereto, there was pending at the city of Albany, New York, before the Governor of New York, a certain extradition proceeding wherein the Governor of Missouri sought to obtain the extradition from the State of New York of one William Ziegler, charged by indictment in the circuit court of said Cole county, Missouri, with the crime of bribery, alleged in said indictment to have been committed by said Ziegler in said Cole county, Missouri; that defendant, on February 3, 1904, in the daily edition of its said newspaper, having reference to the aforesaid extradition proceeding, wrongfully, wickedly and with malice, printed and published, concerning plaintiff, in manner and form as follows, the following false, libelous and defamatory words and matters, to-wit:

## "ZIEGLER'S LAWYER CALLS BROWN LIAR.

### "ACCUSES HIM OF PERJURY.

*"Declares if Missourian Visits New York He Will Be Arrested.*

"Insists Cole County Prosecutor Made Affidavit He Knew was False.

Special Dispatch to the Globe-Democrat.

"New York, February 2.—Gov. Odell's decision, made public yesterday, denying the request of Gov. Dockery of Missouri to surrender William Ziegler of

New York to the Missouri authorities for extradition, has for the present at least brought to a definite and unsuccessful end the attempts to get the New York capitalist into the State of Missouri to stand trial on the charge of perjury.

"The decision leaves Ziegler in the somewhat awkward position of being unable to leave this State without the liability of arrest and a possible repetition of the proceedings before the governor of another State, and the certainty of being arrested and tried if he should visit Missouri. It is probable that Mr. Ziegler will take all possible steps to have the Missouri indictment quashed.

"In fighting the application for extradition, Mr. Ziegler employed the most eminent available counsel, including Edward Lauterbach, Nicoll, Anable and Lindsay and Bowers & Sands. The thoroughness with which these lawyers went into the merits of the case is sure to make it, with the governor's decision, a leading case in all matters affecting extradition. The brief of John M. Bowers, which was followed very closely by Attorney-General Cuneen in the opinion upon which the Governor based his decision, is an interesting one.

"CHARGES BROWN WITH PERJURY.

"It is noteworthy in connection with the case that the danger of arrest which Mr. Ziegler undergoes by visiting Missouri is offset by an equal danger which Prosecuting Attorney Brown of Cole county is under if he at any time visits this State. In his brief, Mr. Bowers openly charges Brown with deliberate and criminal perjury, and Mr. Bowers does not hesitate to say that upon his advent into this State, Brown will be instantly arrested and his indictment for perjury sought for. In his brief Mr. Bowers says, among other things:

" 'What is your Excellency asked to do? You are

asked to consign Mr. Ziegler to the prosecuting attorney of the county of Cole, in the State of Missouri, for trial on an indictment founded on the evidence of his enemies. This prosecuting attorney of the county of Cole made an affidavit upon which was put in motion the machinery of the Constitution under which Mr. Ziegler's extradition was sought.

" 'It was false as to every allegation as to Ziegler's flight. Mr. Ziegler sent a respectful message to the Governor of the State of Missouri, asking that his prosecuting attorney of the county of Cole be produced before your Excellency, to repeat the oath he had made by which the machinery of the law as to extradition had been set in motion. He declined to come, and at page 76 of the stenographer's minutes of the proceedings before your Excellency, it was openly conceded that he had no knowledge of the matters he swore in this regard.

### "Makes Open Charges.

" 'What does this mean? We openly charged before your Excellency upon the hearing that an official of a state had committed perjury pure and simple upon which he instituted a procedure of this nature, committed a crime of the highest grade.

" 'The one fact which the State of Missouri concedes it had to prove to deprive a citizen of the State of New York of his freedom and transport him to the State of Missouri, was that he had been present in that State at a certain time. Mr. Brown, the prosecuting attorney who is to try him, made an affidavit of that fact. Mr. Brown knew it was untrue when he made it. Even if he swore to facts as true of which he had no knowledge, it was perjury.' "

The petition then avers that at the times referred to in said publication plaintiff was the duly qualified and acting prosecuting attorney of Cole county, Mis-

souri, and that the terms "Brown," "Mr. Brown," "Cole County Prosecutor," "Prosecuting Attorney Brown of Cole County," etc., as used in said publication, all have reference to and mean the plaintiff.

The petition further states that the defendant published, sold and circulated the edition of its newspaper containing said false and defamatory matter concerning plaintiff in Cole county, Missouri, and elsewhere in the State of Missouri, as also in the States of Arkansas, Texas, Illinois, Iowa, Kansas, the Indian Territory and elsewhere; that the defendant, in the manner and by the means aforesaid, did falsely, maliciously and wickedly publish, circulate and give currency to the charge, among other things, that plaintiff had committed the atrocious and abominable crime of perjury, and that plaintiff, by said wrongful acts and conduct of the defendant, has been greatly injured and damaged in his good name and reputation, and his feelings and estate, as an attorney-at-law, and in his business pursuits.

Plaintiff in his petition prays judgment for actual damages in the sum of twenty thousand dollars, and for punitive damages in the sum of twenty thousand dollars.

The answer to the petition denied every allegation thereof except such as were specifically admitted; and sets up, in substance, the following defenses:

That the article complained of in plaintiff's petition was a fair, correct and truthful report of both the oral and printed argument of the attorneys of said Ziegler, made in the course of the hearing before the Governor of New York; that the application for the extradiction of Ziegler, with all proceedings in connection therewith, was ancillary to and a part of the criminal prosecution of said Ziegler, begun by the filing of the indictment against him in the circuit court

213 Sup.—40

of Cole county, Missouri, and therefore concerned the administration of justice in Missouri; and that the defendant as a publisher of a public journal, made the publication complained of for the purpose of giving public information in regard to the administration of justice and as a matter of news, and without malice, and that said publication was privileged in law. That the affidavit of plaintiff upon which is based the charge of perjury in the publication complained of was made by plaintiff upon information and in the course of his official duty, and not upon his personal knowledge, and as a fact, and that plaintiff could not be guilty of perjury in making same, and this was so understood by all who saw and read the publication. That the article complained of is a true report of a charge and accusation against plaintiff herein, made by one John M. Bowers, an attorney for said William Ziegler, in the course of said extradition proceedings, and the article clearly and explicitly states that the charge and accusation was made by the said Bowers, and it was published by defendant without approval, indorsement, injurious comment or malice, and as a matter of news.

By way of mitigation of damages, the answer pleaded that the said charge and accusation against plaintiff was made by said John M. Bowers, an attorney for said Ziegler in said extradition proceeding on the hearing of the same, that the article complained of so states, and that it was published by defendant without approval, indorsement, injurious comment or malice, and as a matter of news. That the news and information as to said extradition proceeding was largely sought for and chronicled in the daily press of the country, and that defendant published many articles in regard to said extradition proceedings, and that the article complained of was first published on February 2, 1904, in "The Brooklyn Eagle," a reputable journal, published in the city of New York, and was sent to

defendants, in due course of its business, as the publisher of a newspaper, by its New York correspondent, and that it was published by defendant in good faith, without either malice or negligence, and without any purpose to injure or damage the plaintiff; that on the same day the article complained of was published by defendant, other reputable newspapers, acting independently of each other, published of and concerning the plaintiff statements similar to those published by the defendant.

Plaintiff, in his reply to said answer, denied that the article in question was a fair, correct and truthful report of the oral and printed argument of the attorneys of said Ziegler made in the course of said hearing, and denied that the said publication was privileged; denied that the matters set forth in said publication were obtained during the progress of the hearing of said extradition proceeding before the Governor of New York, but that said publication was copied by defendant's reporter or correspondent from a newspaper published in the State of New York, and was, so far as it related to plaintiff, an unfair and arbitrary selection from the brief of the counsel of William Ziegler referred to in defendant's answer of that part of said brief which maliciously, wickedly and falsely assailed and reflected on plaintiff's personal honor and official and personal integrity; denied that said publication was made in manner and form or under such circumstances as to make it privileged in law; admitted that said affidavit was made by plaintiff on information received from others and in the course of his official duty, but denied that plaintiff could not be guilty of perjury or of knowingly making a false affidavit in so making said affidavit; denied that this was so understood by all who saw and read the publication; denied that said article complained of was a true report of a charge and accusation made by said

John M. Bowers, an attorney for said Ziegler, and averred that if such were the fact it would not constitute any defense for the defendant in this action; denied that the article complained of explicitly states that the charge and accusation was made by said Bowers against plaintiff, and that it was published without approval, indorsement, injurious comment or malice; also denied that said article was published by defendant without malice or under mitigating circumstances.

In support of his case, plaintiff testified at the trial that he had lived twenty-four years in Jefferson City, Missouri, that he was a practicing attorney on February 3, 1904, and prior to that time, and that on said date he was temporary prosecuting attorney of Cole county, Missouri; that he was appointed as said officer on November 14, 1903, and that the appointment continued until February 15, 1904; that he was married and had a family of five children, ranging in ages from twenty-two to four years; that he was a subscriber to the Globe-Democrat which published said article, and that, so far as he knew, no retraction of or apology for the publication complained of had been made by the paper; that said publication had caused him mental pain and humiliation. On cross-examination, the plaintiff stated that he did not know whether the publication of the article in question had affected his standing as a citizen or lawyer in the community, and did not know that it had injured him in his business or social relations; that he had no personal knowledge of any injury done him, socially or professionally, outside of Cole county by said publication. He further stated that he knew of no ill-feeling on the part of the Globe-Democrat or its officers against him; that since the publication of the said article he had been appointed by the curators of the State University to look after the collateral inheritance tax;

that the application for the extradition of Ziegler was made on November 16, 1903, and that plaintiff made the affidavit upon the information communicated to him by Attorney-General Crow, who had been before the grand jury and who went over the facts with plaintiff.

Thomas Hollingshead, business manager of the defendant, testified on behalf of plaintiff that the defendant company publishes the Globe-Democrat, and had been doing so since the year 1876; that the daily circulation of the paper in February, 1904, was from seventy-five to one hundred thousand—possibly one hundred and twenty-five thousand—copies. Witness said that the defendant has subscribers in Cole county, Missouri, and that the paper circulates in all the western and southwestern States; that the paper is published in St. Louis, and, in the opinion of witness, there were subscribers to the paper in every county of Missouri; that the capitalization of defendant company was a half million of dollars; that it owns an eight-story brick building in St. Louis worth from three to four hundred thousand dollars, and that the value of defendant's newspaper property was probably two and a half million dollars. The witness further testified that the article complained of was published by defendant in an effort to publish all the news occuring over the country, especially in Missouri, and as a matter of public interest. He did not know that prior to the publication of said article any attempt was made to interview plaintiff to ascertain the correctness of the articles, nor did he know that any offer of retraction or apology had been made since it was published.

Three witnesses testified for plaintiff that his general reputation and social standing in the community, about the 3rd of February, 1904, was good, and said witnesses further testified to the effect that, so far

as they knew, plaintiff's reputation and social standing was as good at the time of the trial as before the article complained was published.

Defendant read in evidence the stenographer's report of the extradition hearing before Governor Odell, of New York, which report included the arguments of counsel, remarks of Governor Odell, some letters, telegrams and affidavits produced at said hearing, and the testimony of several witnesses thereat, all of which tended to show that Ziegler was in the city of New York and not in Missouri on March 19, 1901, to which date Governor Odell restricted the proof on said hearing. The evidence introduced by the State of Missouri on said hearing was also read in evidence on the trial of the present case, which evidence went to show that said Ziegler was in Missouri on March 19, 1901.

Defendant also read in evidence the deposition of John M. Bowers, one of the counsel for Ziegler in the extradition hearing before Governor Odell, and who stated that said hearing was on December 7, 1903, and that the brief filed with Governor Odell was prepared by him. The witness stated that he had read the record of the proceedings in said matter, that the same was correct, and that the statements therein purported to have been made by him were in fact so made by him. He further testified that the quotation from the brief set forth in the article complained of constituted but a small part of the same, and was only a portion of the argument on one point. On cross-examination, he stated that the brief was sent to Governor Odell on January 11, 1904, and doubtless reached him on January 12, 1904, and that Govenor Odell's decision on the extradition proceeding was made on February 1, 1904. Defendant read in evidence the printed brief of witness Bowers in said extradition proceeding, which brief consisted of about forty-three pages of

printed matter, subdivided into two points or headings.

The deposition of Harry E. Whiting, the New York correspondent of the St. Louis Globe-Democrat, was also read in evidence by defendant. This witness testified that he sent to the defendant the articles complained of in this action; that on the evening of February 2, 1904, he discovered the article in the Brooklyn Eagle; that he clipped the story word for word from the Eagle and sent it by telegraph to the Globe-Democrat, and that he did so because it was a matter of local interest; that he did not know Mr. Brown, Mr. Ziegler or Mr. Bowers, and that he was still in the employment of the Globe-Democrat. On cross-examination, he testified that the article as published contained all he wired; that he did not furnish the "heads" to said article; that he had not seen a copy of Mr. Bowers's brief when he sent the article to the defendant; that he was not present at the hearing before Governor Odell on December 7, 1903, and had not seen a copy of the testimony taken at that hearing, and that, prior to the article complained of, he had not sent to defendant any article or story referring to the perjury charge against plaintiff.

Defendant also read in evidence various articles bearing on the Ziegler extradition matter, published in the Globe-Democrat at different times between November 14, 1903, and February 1, 1904. These publications consisted of correspondence dated at Jefferson City, Albany and New York City, and relate to different matters connected with the Ziegler extradition proceeding from the time Ziegler was indicted in the circuit court of Cole county, Missouri, until the final decision of Governor Odell, at Albany, on February 1, 1904, refusing to honor the requisition for Ziegler made by the Governor of Missouri. One of these articles, dated November 14, 1903, purporting to

be a special dispatch from Jefferson City, Missouri, contained the following paragraph with reference to plaintiff:

"Frank Brown, who was temporarily appointed Stone's successor, it is being told on the streets to-night, has himself antagonized Judge Hazell, and the latter is already bitterly criticised for the selection of Mr. Brown, who is not looked upon as being regular in his Democracy, he having gone over to the 'gold bugs.' Because of this fact, he lost his place as official reporter of the State Supreme Court. The silver wing of the party will carry this into the contest against Judge Hazell, who is a candidate for reelection."

Defendant then read in evidence a certified copy of the requisition papers, that is to say, the requisition made by Governor Dockery for the arrest and delivery of Ziegler to the Missouri authorities; also the application of plaintiff, as prosecuting attorney of Cole county, Missouri, to Governor Dockery, for the issuance of the requisition on the Governor of New York, with accompanying documents, including the indictment found against Ziegler for bribery by the Cole county grand jurors.

Over the objection of plaintiff, defendant read in evidence a publication of similar nature to the article complained of in this action, and bearing same date, published in the St. Louis Republic, and which latter article is the subject of a similar suit pending in this court.

Plaintiff, in rebuttal, read in evidence the article printed in the "Brooklyn Eagle" of February 2, 1904, being the publication referred to by witness Whiting as the one from which he copied the article sued on. Said "Brooklyn Eagle" article, in addition to the matter extracted therefrom by defendant's corre-

spondent and published in defendant's newspaper on February 3, 1904, contained the following:

"There are many references in the brief to Evelyn B. Baldwin and the part he took in urging the Ziegler indictment. One of these references is worded as follows: 'The State of Missouri produces the affidavit of Evelyn B. Baldwin. Baldwin's threats to injure Ziegler were sufficiently proven by Mr. Ziegler's answer and the accompanying affidavits filed with your Excellency, none of which have been questioned or contradicted. Baldwin swears that in March, 1901, Ziegler told him that he had to go to Missouri before the Missouri Legislature adjourned; that Ziegler was going out to crush the alum baking powder people. That about the middle of March, 1901, he went to the Forty-second street railway station in New York City with Mr. Ziegler, who told affiant that he was going that night to Missouri; that at that station Ziegler introduced affiant to Kelly; that Ziegler and Kelly came away on the train; that afterward, when Ziegler had returned to New York, affiant was present when Ziegler and Kelly talked about the trip of Ziegler and Kelly to Missouri, and about the defeat of the legislation in Missouri which Ziegler was interested in defeating, and that affiant waited for Ziegler to return from Missouri to New York until March 21 and 22, and up to that time he did not know of his return. The next time he saw Ziegler after Ziegler went to St. Louis in the middle of March was on the 28th of March, 1901, when Ziegler returned to New York from St. Louis, and that Ziegler told him he had accomplished what he went to Missouri for. Now this affidavit of Baldwin's is sworn to in Missouri. He was one of the witnesses called upon whose evidence the indictment against Mr. Ziegler was found. Mr. Ziegler denies in detail all of Baldwin's assertions. That they are

false is proven by the evidence in the case showing Mr. Ziegler was in New York at these periods.''

The evidence shows that said statement by Ziegler, alluded to in the ''Brooklyn Eagle'' article and in Mr. Bowers's brief, denying the assertions of said Baldwin, was not made under oath.

The alleged libelous publication upon which this action is based, was identified and read in evidence by both plaintiff and defendant.

The main question presented for consideration upon this appeal is whether, under the evidence disclosed by the record, the publication complained of was privileged and of a privileged occasion.

Defendant contends that not only was the hearing before Governor Odell a privileged occasion, but that, in addition, the application for the extradition of William Ziegler, with all the proceedings in connection therewith, judicial and quasi-judicial, *inter partes* and *ex parte,* formed a privileged occasion, and that a fair report thereof, in the absence of actual malice, was privileged.

It must be conceded that the proceedings in question were of a quasi-judicial character, and if the report published by the defendant was a full, fair and impartial report, it was privileged.

In Boogher v. Knapp, 97 Mo. l. c. 129, it is said: ''The doctrine of the authorities is that the report must in effect be a fair and impartial report of what took place with reference to its effect on plaintiff's character. Whether it is such a report is a question for the jury. The report is fair and impartial, so far as the plaintiff is concerned, if a verbatim report of the proceedings would have the same effect on his character as the report made. The only interest plaintiff has in the accuracy of the report is that it shall be so far accurate as not to be more injurious to him than a verbatim report would be.'' [Barber v. St.

Louis Dispatch Co., 3 Mo. App. 377; Hawkins v. Globe Printing Co., 10 Mo. App. 174.]

The English rule would seem to have been that in order to justify the publication of proceedings of the character under discussion, and render the publication privileged, the proceedings must have been directly judicial, or had in a court of justice. But it is held in Barrows v. Bell, 7 Gray 301, that the English rule is too broad. The court, speaking through Chief Justice SHAW, said: "But whatever may be the rule as adopted and practiced on in England, we think that a somewhat larger liberty may be claimed in this country and in this commonwealth, both for the proceedings before all public bodies, and for the publication of those proceedings for the necessary information of the people." The rule is now extended to executive and legislative proceedings and investigations. [25 Cyc. 410.]

"While it has been held that the publication of matter defamatory of an individual is not privileged merely because the libel is contained in a fair report in a newspaper or pamphlet of what occurred at a meeting held for a public purpose, yet it seems to be the prevailing rule that proceedings, if of public interest, need not be those of a judicial or legislative body to render a fair report thereof privileged." [18 Am. and Eng. Ency. Law (2 Ed.), 1046; Allbutt v. General Council, etc., 23 L. R. Q. B. D. 400.]

Arnold v. Star Sayings Co., 76 Mo. App. 159, was a suit for an alleged libel published by the defendant in its newspaper, called the Star Sayings. The court in the course of its opinion said: "The letter and postal from the Evansville chief of police were not a statement of facts developed on a judicial investigation, nor the statement of a fact resulting from a judicial investigation, nor were they matters about which the public had a right to be informed, nor was

it information useful to the public, and was not there-
fore privileged.''

It would seem from these and other authorities
which might be referred to that the occasion was of
such importance to the public that a full and fair re-
port of the proceedings was justified, even though pri-
vate rights might by reason of such report be violated,
and that after the return of the indictment against
Ziegler into court all the proceedings with respect
thereto and in connection therewith, including the pro-
ceedings for his extradition, constituted one privileged
occasion, and that full or abridged reports of the same
were privileged, provided they were fair and impartial
so far as plaintiff was concerned, and the abridged
reports, if any, had the same effect upon his character
as a full and verbatim report of the proceedings would
have had, which latter was a question for the jury.

The rule is otherwise, however, with respect to
the publication of partial proceedings, upon which no
judicial action has been had. Thus it was held that
the contents of a petition for divorce (Barber v. St.
Louis Dispatch, supra); of a petition for disbarment
(Cowley v. Pulsifer, 137 Mass. 392); of a bill in chan-
cery (Pub. Co. v. Gamble, 115 Tenn. 663); of a peti-
tion in a bastardy charge (Park v. Detroit Free Press
Co., 72 Mich. 560), could not be published before ju-
dicial action had been taken thereon. The general
rule is stated in Barber v. St. Louis Dispatch Co.,
supra, to be as follows:

''Where a court or public magistrate is sitting
publicly, a fair account of the whole proceedings, un-
colored by defamatory comment or insinuation, is a
privileged communication, whether the proceedings are
on a trial or on a preliminary and *ex parte* hearing.
But the very terms of the rule imply that there must
be a hearing of some kind. In order that the *ex parte*
nature of the proceeding may not destroy the privil-

edge—to prevent such result—there must be at least so much of a public investigation as is implied in a submission to the judicial mind with a view to judicial action. This will be apparent if we regard the reason of the rule. Perhaps the earliest, certainly one of the best, expressions of the reason of the rule is that contained in the opinion of LAWRENCE, J., in Rex v. Wright, 8 Term Rep. 293, and often since quoted with approval. It is there stated, in substance, that though the publication of proceedings in courts of justice may severely reflect on individuals, yet such publications, if they contain true accounts, are not libels nor the subjects of action, because it is of great importance that the proceedings of courts of justice shall be known; that the general advantage to the country in having these proceedings made public more than counter-balances the inconveniences to the person whose conduct may be the subject of the proceedings. But the proceedings there alluded to were proceedings in open court, as is shown, not only by the judge's language, but by the case to which he makes direct reference and upon which his remarks hinge, the case of Curry v. Walter, 1 Esp. 456, where the publication was of a speech made in open court, in printing which in The Times the supposed libel consisted. So, where it is said 'it is of great consequence that the public should know what takes place in court, and the proceedings are under the control of the judges' (per Lord CAMPBELL, in Davison v. Duncan, 7 El. & Bl. 231); or, 'we ought to make as wide as possible the right of the public to know what takes place in any court of justice' (per Chief Baron POLLOCK, in Ryalls v. Leader, L. R. 1 Ex. 299), it is apparent that judicial proceedings in open court are spoken of. Indeed, the English cases on which the appellant most confidently relies are all cases of proceedings in open court, or before a public magistrate sitting as a court. Curry v. Walter has

been noticed above. In Lewis v. Levy, El., B. & E. 537, the plea was that the proceedings took place 'before a public court of justice, to-wit, a justice of the peace then sitting and holding a public court;' that 'the proceedings were had in the said public court,' 'upon the hearing of the said charge,' etc. Lord CAMPBELL, in denying the position that the privilege must be confined to the proceedings of superior courts, said: 'But on such a question the dignity of the court cannot be regarded; and we must look only to the nature of the alleged judicial proceeding which is reported.' The decision proceeds distinctly upon the ground of a hearing, an investigation, a judicial inquiry and action. Lord CAMPBELL further remarked: 'But although a magistrate, upon any preliminary inquiry respecting an indictable offense, may, if he thinks fit, carry on the inquiry in private, and the publication of any such proceedings before him would undoubtedly be unlawful, we conceive that, while he continues to sit *foribus apertis,* admitting into the room where he sits as many of the public as can be conveniently accommodated, and thinking that the course is calculated for the investigation of truth and the satisfactory administration of justice (as in most cases it certainly will be), we think the court in which he sits is to be considered a public court of justice. In other cases it is stated that the publication is a mere extension of the area of publicity; that, while the court-room can contain but few persons, the public press indefinitely extends the field of notoriety. An examination of the latter cases— Pinero v. Goodlake, 15 L. T. Rep. (N. S.) 676; Wason v. Walter, L. R. 4 Q. B. 93, where Lord COCKBURN's decision is based upon the analogy between public proceedings in courts of justice and public debates in the Houses of Parliament, and the advantage to the people that it should be known what passes within their walls; Hunter v. Sharpe, 4 F. & F. 983—will show that a

hearing and an inquiry in public are essential to bring the publication within the rule as to privileged communications. It may be safely asserted that if a London newspaper were to publish the one-sided statements of a bill filed in the Divorce Court, merely upon the filing, and previous to its coming before that court for judicial action, the Court of Queen's Bench would not, upon the authority of Curry v. Walter, or Lewis v. Levy, or Wason v. Walter, decide that such a publication was privileged. Those cases are authority to the contrary, not only upon their facts, but by reason of the limitations which are expressly laid down in them. He who seeks to stretch a wholesome rule beyond its legitimate application attacks the rule itself; and the able judges who decided those cases were too good logicians to impair the force of their own arguments by extending an exceptional rule to cases where the reason that creates the exception does not exist. So, too, in the case of Ackerman v. Jones, 5 J. & S. (N. Y. Sup. Ct.), 42, the publication expressly described a public appearance and statement of a criminal charge before a magistrate, and it appears that the affidavit was presented to the magistrate, was considered and acted upon by him, and that process issued upon it. The court, in its opinion, said: 'The affidavit in question became a part of the regular judicial proceedings in a criminal suit by the people on the complaint of Burleigh.'"

As the publication of judicial or quasi-judicial proceedings in a case of a civil character may be privileged on the ground of public interest, we can see no reason why the same rule should not apply in criminal cases, for the public have as much interest in a criminal as in a civil proceeding, if not more; and it is upon the principle that nothing is foreign to the public to which it is a party that the criminal action of the State of Missouri against William Ziegler, after the

indictment was made public, as well also as the extradition papers and the steps taken to secure their issue, were privileged. We do not, however, intend to be understood as holding that telegrams which passed between parties in the State of New York and the State of Missouri with respect to the indictment of Ziegler and his extradition were part of the proceedings, or were admissible in evidence, but only such facts as were connected with the procurement of the indictment and the proceedings following the same. Matters that were mere hearsay were not admissible.

In this connection, it may be said that a publication is not shorn of its privileged character, if such it ever possessed, because abridged and condensed, if it remain fair and impartial. [Boogher v. Knapp, supra; Newell on Slander and Libel (2 Ed.), sec. 161, p. 554; 18 Am. and Eng. Ency. Law (2 Ed.), 1045; Folkard's Starkie on Slander and Libel, sec. 227; Cowley v. Pulsifer, supra.] So, full or abridged reports of a legal proceeding continued from day to day, if as fair and impartial as publications under the circumstances will permit, are privileged. In Lewis v. Levy, El., B. & E. 537, it is held that if judicial proceedings continue more than one day, and their publication is not expressly forbidden by the court, a report published in a newspaper every morning of the proceedings of the next preceding day is privileged, if fair and accurate, but that all comment on the case must be deferred until the proceedings terminate. To the same effect are Risk Allah Bey v. Whitehurst, 18 L. T. Rep. (N. S.) 615; Newell on Slander and Libel (2 Ed.), p. 554.

It has been held that the headlines to the publication "are only privileged if they are a fair index of a truthful report." [Stuart v. Press Pub. Co., 83 App. Div. (N. Y.) 467; Lawyers' Co.-Op. Pub. Co. v. West Pub. Co., 52 New York Supp. 1120; Hart v. Sun

Print. & Pub. Assn., 79 Hun 358.] The headlines were no part of the proceeding before Governor Odell for the extradition of Ziegler, but were voluntary statements of the publisher of the libel. The headlines were as follows:

## "ZIEGLER'S LAWYER CALLS BROWN LIAR.

### "ACCUSES HIM OF PERJURY.

*"Declares if Missourian Visits New York He Will be Arrested.*

"Insists Cole County Prosecutor Made Affidavit He Knew was False."

Such headlines were not privileged matter at common law, and were libelous remarks or comments, even if the matter could be deemed otherwise privileged. An inspection of them would seem to be sufficient to demonstrate this fact. "Their publication in this manner was certainly the equivalent to a remark or comment unnecessary to a fair and truthful report of judicial proceedings, and likely to raise inferences highly detrimental to the character and standing of the one concerning whom they were printed and published." [Dorr v. United States, 195 U. S. 138.]

It is also insisted by plaintiff that the defense of privilege is not available to defendant for the reason that the quotations from the brief of Mr. Bowers and his associates, filed in the Ziegler extradition proceeding before the Governor of New York, are not privileged matter.

In Saunders v. Mills, 6 Bing. 213, it is said that "a statement in a newspaper of the circumstances of a cause tried in a court of justice, given as from the mouth of counsel, instead of being accompanied or corrected by the evidence, is not such a report of the pro-

213 Sup.—41

ceedings of a court of justice as a newspaper is priv-- ileged to publish.'' In Rex v. Creevey, 1 Maule & S. 273, the defendant, a member of the House of Com- mons, had made a speech in Parliament in which he used language of a slanderous character concerning another person, and which he afterwards caused to be published in a newspaper. It was ruled that his priv- ilege as a member of Parliament authorized him to make the speech, but did not authorize him to publish a report of the speech in a newspaper. It was further held in that case that counsel have a right, whilst the cause is going on, to endeavor to produce an effect by making such observations on the credit and character of parties and their witnesses, but that neither the per- son making them nor any other person who hears them has the right afterwards to publish such observations; that when the occasion ceased the right would also cease, and that it would be no justification to plead that such a publication was a transcript of the speech. So, in Commonwealth v. Godshalk, 13 Phila. 575, it is held that the speech of counsel in a judicial proceeding does not afford matter for a privileged publication, and that if it contain scandalous and defamatory matter, a prosecution for libel may be maintained, citing Com. v. Culver, 2 Pa. L. J. 362; Saunders v. Mills, supra; Flint v. Pike, 10 E. C. L. 380; Lake v. King, 1 Saund. 120; Rex v. Creevey, supra; Rex v. Lord Abingdon, 1 Esp. 226. Cooley says, ''It does not follow, because counsel may freely speak in court as he believes or is instruct- ed, that therefore he may publish his speech through the press.'' [Cooley on Const. Lim. (6 Ed.), 549.]

It is true that in Wason v. Walter, L. R. 4 Q. B. 73, it is held that a faithful report in a public news- paper of a debate in either house of Parliament, con- taining matter disparaging to the character of an in- dividual which had been spoken in the course of the debate, is not actionable at the suit of the person whose

character has been called in question, but that the publication is privileged on the same principle that an accurate report of a proceeding in a court of justice is privileged, that is, that the advantage of publicity to the community at large outweighs any private injury resulting from the publication. But even in that case it is said, "Our judgment will in no way interefere with the decisions that the publication of a single speech for the purpose or with the effect of injuring an individual will be unlawful, as was held in the case of Rex v. Lord Abingdon, 1 Esp. 226, and Rex v. Creevey, 1 M. & S. 273."

While words reflecting on the character of an individual, spoken or written in due course of a judicial or quasi-judicial proceeding, if pertinent to the subject of the inquiry or relevant to the issue, or in a legislative assembly, by a member thereof, in the discharge of his official duties, are privileged, this privilege does not go to the extent of allowing the publication of the slanderous words in a newspaper, even though the publication is made in good faith and as a matter of news. The authorities draw a broad distinction between the right of a person, on a privileged occasion, to utter words reflecting upon the character of another, and the right to publish through the newspaper press any false and defamatory matter contained in such person's speech or address. As said in Hotchkiss v. Oliphant, 2 Hill 510: "The act of publication is an adoption of the original calumny, which must be defended in the same way as if invented by the defendant. The republication assumes and indorses the truth of the charge, and when called on by the aggrieved party, the publisher should be held strictly to proof. If he chooses to become the indorser and retailer of private scandal, without taking the trouble of inquiring into the truth of what he publishes, there is no ground for complaint if the law, which is

as studious to protect the character as the property of the citizen, holds him to this responsibility. The rule is not only just and wise in itself, but if steadily and inflexibly adhered to and applied by courts and juries, will greatly tend to the promotion of truth, good morals and common decency on the part of the press, by inculcating caution and inquiry into the truth of charges against private character before they are published and circulated throughout the community." [State ex inf. Crow v. Shepherd, 177 Mo. 205.] In Stuart v. Press Pub. Co., 83 App. Div. (N. Y.) l. c. 477, it is said: "Liberty of speech and of the press is guaranteed by the supreme law of the land and will be zealously guarded, preserved and enforced by the courts. The provisions of the Federal and State Constitutions . . . . were designed to secure rights of the people and of the press for the public good, and they do not license the utterance of false, slanderous or libelous matter. Individuals are free to talk and the press is at liberty to publish, and neither may be restrained by injunction, but they are answerable for the abuse of this privilege in an action for slander or libel under the common law, except where by that law or by statute, enacted in the interest of public policy, the publication is privileged and deemed for the general good, even though it works a private injury."

In the case at bar, the defendant did not publish the entire brief of Mr. Bowers and his associates, but only such portions thereof as seemed to reflect upon the character and integrity of the plaintiff and to impute to him crime or moral turpitude. This was not privileged. [18 Am. and Eng. Ency. Law (2 Ed.), 1045.]

Judge COOLEY, in his work on Constitutional Limitations, states the law thus: "It seems to be settled that a fair and impartial account of judicial proceedings, which have not been *ex parte*, but in the hearing

of both parties, is, generally speaking, a justifiable
publication. But it is said that, if a party is to be al-
lowed to publish what passes in a court of justice, he
must publish the whole case, and not merely state the
conclusion which he himself draws from the evidence.
A plea that the supposed libel was in substance a true
account and report of a trial has been held bad; and a
statement of the circumstances of a trial as from
counsel in the case has been held not privileged. The
report must also be strictly confined to the actual pro-
ceedings in court, and must contain no defamatory ob-
servations or comments from any quarter whatsoever,
in addition to what forms strictly and properly the
legal proceedings." [Cooley's Cons. Lim. (7 Ed.),
637.]

Upon the same subject, Newell on Slander and
Libel (2 Ed.), sec. 163, page 556, says: "The pub-
lisher must add nothing of his own. He must not state
his opinion of the conduct of the parties, or impute
motives therefor; he must not insinuate that a par-
ticular witness committed perjury. That is not a re-
port of what occurred; it is simply his comment on
what occurred, and to this no privilege attaches. Of-
ten such comments may be justified on another ground
—that they are a fair and *bona fide* criticism on a mat-
ter of public interest, and are therefore not libelous.
But such observations, to which quite different con-
siderations apply, should not be mixed up with the his-
tory of the case. Lord CAMPBELL said: 'If any com-
ments are made, they should not be made as part of
the report. The report should be confined to what
takes place in court, and the two things—report and
comment—should be kept separate.'"

The question of whether the publication was a
libel, and was or was not properly the subject of this
action for damages, was submitted to the jury by an
instruction asked by defendant, by which instruction

the jury were told that upon this question they were the sole judges of the law as well as the facts. By their verdict the jury in effect found that the article was a libel. If libelous, it follows that the publication was not privileged.

Defendant insists that the court, by its refusal to give defendant's instruction number 4, upon the question of privileged publication, committed error. Upon this question the defendant submitted to the court three instructions, one of which was given and the others refused. The refused instructions are as follows:

"3. The court instructs the jury that the publication of fair and impartial reports of judicial and quasi-judicial proceedings and of hearings before public magistrates are what are known in the law as privileged publications and the publishers thereof are not liable therefor, though they contain libelous matter, unless they were actuated by malicious motives in publishing same, and in this connection the jury are instructed as follows:

"If they believe and find that an indictment was returned into the Cole County Circuit Court, charging one Ziegler with the offense and crime of bribery and that thereupon upon affidavit by plaintiff herein, the Governor of Missouri made requisition upon the Governor of New York for the extradition of said Ziegler because he was a fugitive from justice from the State of Missouri and that various preliminary steps were had and taken in Jefferson City, Missouri, and the city of Albany, New York, in connection with said extradition, and that thereafter a hearing was had in the city of Albany before the Governor of New York, at which evidence was heard and argument made as to whether said Ziegler was a fugitive, and the jury further believe and find that defendant published from time to time accounts of said proceedings and hear-

ing and argument and that the article complained of formed part of said accounts, and if the jury further believe that the accounts of said proceedings taken as a whole and together form and were a fair and impartial report of said extradition proceedings, then they will find for the defendant.

"4. The court instructs the jury that a report of a judicial proceeding to be fair and impartial and therefore privileged need not be a full and verbatim report of said proceedings but that a condensed or abridged report of such proceedings is privileged, if it is fair and impartial in its character, and therefore if the jury believe that defendant published only abridged reports of the proceedings in connection with the extradition of William Ziegler and in doing so published in the article complained of only a part of the argument and brief made and filed by John M. Bowers in said extradition proceedings, yet if the jury further believe and find that the abridged reports of said proceedings so made by defendant including the part of said argument and brief so made and filed are fair and impartial reports of said proceedings in their relation to and effect upon plaintiff's character, then the jury will find for defendant, unless they further find that defendant made such abridged reports from malicious motives and with a desire to injure plaintiff."

Instruction number 2, given, is as follows:

"The court instructs the jury that the failure of the defendant to publish all of the argument of John M. Bowers in the article complained of or all the proceedings in connection with the extradition of William Ziegler does not make defendant's account of same unfair and partial so far as plaintiff is concerned, if the jury find that the publication of the full argument and a full account of the proceedings would have had the same effect on plaintiff's character as the publication of part thereof."

Defendant contends that if instructions 3 and 4 were refused because they extended the privileged occasion to all the proceedings in relation to the extradition of William Ziegler, then instruction No. 2 should also have been refused, as being open to the same objection. A party cannot, however, predicate error of the action of the court in giving an instruction asked by himself, it matters not that it be erroneous and open to the same objections as other refused instructions. In this connection, it may be said that it was for the court to determine whether the occasion on which the alleged defamatory statements were made was such as to render the communication privileged. [Newell on Slander and Libel (2 Ed.), p. 392; Callahan v. Ingram, 122 Mo. 355.]

Said instruction number 4 was properly refused, the matter therein contained having in effect been covered by instruction number 2; and said instruction number 3 was properly refused for several reasons, and particularly for the reason that, with reference to the extradition hearing before Governor Odell, it would avail the defendant nothing although the jury might find "that defendant published *from time to time* accounts of said proceedings and hearing and argument and that the article complained of formed part of said accounts," because, under the rule laid down by the authorities, it was necessary that the jury find that defendant published its report of the proceedings during the progress thereof, or the morning after the proceedings of the previous day. The defendant was not at liberty to publish excerpts from Mr. Bowers' brief, reflecting on plaintiff's character, after the proceedings had terminated and the decision was rendered. The record shows that the brief of Mr. Bowers was received by Governor Odell on January 12, 1904, and the proceedings were closed and the decision rendered on February 1, 1904, while the libel-

ous matter complained of did not appear in defendant's newspaper until February 3, 1904, twenty-two days after the brief was submitted and two days after the decision was made. For this reason, if no other, the publication was not privileged.

The court, of its own motion, gave the following instruction:

"The court instructs the jurors that while the publication of an abridged or condensed report of a public trial or judicial proceeding, if prepared impartially, truthfully and fairly, will be deemed privileged, and protect the publisher against an action therefor, yet the addition by the publisher of any unfavorable insinuations or comments of his own as to the person assailed, or the omission or suppression of parts of the proceedings which would tend to qualify or explain the defamatory matter and place it in a more favorable light for the person defamed, is evidence of malice and destroys the privilege. And, therefore, unless the jurors believe and find from the evidence that the report published by defendant of the proceedings of the William Ziegler extradition matter before the Governor of New York was a fair, truthful and impartial report or abridged report of said proceedings as above explained (so far as it related to the plaintiff herein and the accusations there made against his character), the jury will disregard the defense of privilege made by the defendant and find against it on said defense.

"And the jurors are further instructed that even though said defense of privilege, as above indicated, is sustained by the evidence, yet it is not available to the defendant, if the jury find and believe, taking into consideration the character of the publication and all other facts and matters in evidence, that the defendant was actuated by actual malice or ill-will towards the plaintiff when it made said publication."

Defendant complains of the phraseology of this

instruction and challenges the declarations of law contained therein.  Instruction numbered 7, given by the court at plaintiff's request, told the jury that the charge of perjury was libelous *per se,* and if false is presumed to have been made with malice, and that under the pleadings in this case the charge is false; and defendant contends that, as the presumption of malice from a false, defamatory publication is rebutted or overcome when the defamatory words are spoken or printed on a privileged occasion, it was error to say in said instruction given by the court of its own motion, that "the addition by the publisher of any unfavorable insinuations or comments of his own as to the person assailed, or the omission or suppression of parts of the proceedings which would tend to qualify or explain the  defamatory matter and place it in a more favorable light for the person defamed, is *evidence of malice* and destroys the privilege."

We cannot see wherein this declaration of law is erroneous: "A condensed report might be published, if prepared faithfully and truthfully, but the suppression of parts of the testimony which would tend to qualify the defamatory matter contained in the report would be evidence of malice, and would destroy the privilege."  [Newell on Slander and Libel (2 Ed.), p. 554; Salisbury v. Union and Advertiser Co., 45 Hun 120.]

In the case at bar, as in the case last cited, there was no direct evidence of malice on the part of the defendant, but malice was inferable from the publication itself and from the fact that part of the testimony in the extradition hearing which would have tended to qualify or explain the defamatory matter published was suppressed or omitted, and that only such part of Mr. Bowers's brief was published as relates to the charge of perjury and making a false affidavit.  Had other parts of said brief been published, or had the

article which appeared in the "Brooklyn Eagle," from which was extracted the publication complained of, been published in full, it would have appeared that there was substantial evidence to support the affidavit of plaintiff that Ziegler was in Missouri on or about March 19, 1901. The latter part of the "Brooklyn Eagle" article contained matter, purporting to be taken from Mr. Bowers's brief, with reference to Evelyn Baldwin's affidavit, to the effect that about the middle of March, 1901, he (Baldwin) went to the 42nd Street Railway Station in New York City with Ziegler; that the latter told Baldwin he was going that night to Missouri to crush the alum baking powder people; that Ziegler introduced Kelly to Baldwin; that afterwards, when Ziegler returned to New York, he and Kelly, in the presence of Baldwin, spoke of their trip to Missouri, and of their success in defeating the legislation in which Ziegler was interested.

Defendant also objects to the statement in said instruction, "that even though said defense of privilege is sustained by the evidence, yet it is not available to the defendant if the jury find and believe, taking into consideration the character of the publication and all other facts and matters in evidence, that the defendant was actuated by actual malice or ill-will towards the plaintiff when it made said publication." What the defendant particularly objects to in said instruction is the phrase, "character of the publication."

We think that the jury, in determining the question whether the defendant was actuated by actual malice or ill-will towards the plaintiff when it made said publication, had the right to take into consideration the character of the publication itself, which contained remarks and comment detrimental to plaintiff outside of and in addition to the extracts from Mr. Bowers's brief. "In such case the presumption of mal-

ice would the more easily arise." [American Pub. Co. v. Gamble, 90 S. W. 1005, and cases therein cited.]

While the verbiage of the instruction might be open to slight criticism, we are unable to see how it could have prejudiced the rights of the defendant.

Defendant's next contention is that under the rulings of the court the sole defense in this case "for the jury" was that of privilege, and that as there was evidence tending to substantiate it, the defendant was entitled to have the same submitted affirmatively, as it requested. The refusal of the court to give the instructions asked by defendant upon this feature of the case was justified, we think, upon the ground of want of evidence to justify them, that is, evidence that the publication was privileged; and the fact that the court could have framed the instruction given of its own motion in a manner which would have made it more direct and pointed with respect to the defense of privilege, so far as that defense was available in connection with the published report of the proceedings before Governor Odell, cannot be assigned as error. The instruction given by the court is not misleading or erroneous, and if defendant had desired more pointed instructions than this one it was its duty to have asked them. The instructions asked by defendant in this regard were deficient, as stated, and the court is not required to make or give instructions of its own motion in a civil case. [Minter v. Bradstreet Co., 174 Mo. 491.] Nor was this instruction erroneous because the jury were not given any hypothesis or statement of facts from the evidence upon which they could find a verdict for the defendant, for no such facts were disclosed by the evidence.

It is further contended that the court erred in giving, at plaintiff's request, instructions which ignored defendant's plea of privilege, and especially in giving instructions numbered seven and eleven, which,

it is contended, assumed to state the whole case. But these instructions, when considered in connection with all other instructions given, presented the case very fairly to the jury and if any error was committed, it was in defendant's favor, of which it has no right to complain. "It is not necessary that an instruction should refer to another, or that the issues involved be presented to the jury in one instruction, but if the instructions, taken as a whole, present the issues fairly, and are not calculated to mislead the jury, they are all the law requires." [Minter v. Bradstreet Co., 174 Mo. 444.]

From what we have said, it follows that there is no merit in the contention that the failure of the court to give the instruction asked by defendant, at the close of all the evidence, directing a verdict for it, was error.

It is also claimed by defendant that the court should have sustained defendant's motion for a new trial upon the ground that the verdict was against the weight of the evidence, excessive, and the result of bias and prejudice on the part of the jury.

As to the first proposition, it seems unnecessary to say more than what has already been said in this opinion to the effect that the publication is libelous *per se,* and not privileged, which entitled plaintiff to a verdict, the only question being the amount of damages allowed by the jury.

Nor are we willing to say that the verdict was excessive or the result of passion or prejudice. Coleman v. Southwick, 9 Johns. (N. Y.) 45, was an action for libel, and Chief Justice KENT, speaking for the court, on the question of damages, said: "The last point is that the damages ought to have been nominal only, because the publication was made under a mistake of the fact. The *quo animo* with which the libel was published was altogether a matter for the consideration of the jury; and the circumstances which might tend

to aggravate or extenuate the damages, and lessen or increase the degree of malice which the law imputes to the publication of every unjustifiable libel, were no doubt urged to the jury upon the trial, as they have since been presented to this court, upon the argument of the present motion. The question of damages was within the proper and peculiar province of the jury. It rested in their sound discretion, under all the circumstances of the case, and unless the damages are so outrageous as to strike every one with the enormity and injustice of them, and as to induce the court to believe that the jury must have acted from prejudice, partiality or corruption, we cannot, consistently with the precedents, interfere with the verdict. It is not enough to say that, in the opinion of the court, the damages are too high, and that we would have given much less. It is the judgment of the jury, and not the judgment of the court, which is to assess the damages in actions for personal torts and injuries."

Cases of this character differ so much in the facts and circumstances connected therewith, and out of which they grow, that the amount of damages allowed by a jury in one case forms no guide or rule for the assessment of damages in another; so that, of necessity, the jury are the sole judges of that matter, and their finding will not be disturbed unless their verdict is so excessive as to clearly indicate that it is the result of bias and prejudice on their part, which we are unwilling to say is the case here.

The judgment is affirmed. All concur.